# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CALVIN EARL AYERS,**

        **Petitioner,**

**v.**                                 **Civil Action No. 5:10cv29**
                                             **(Judge Stamp)**

**WARDEN JOEL ZIEGLER,**

        **Respondent.**

## REPORT AND RECOMMENDATION

In this § 2241 habeas corpus action, the *pro se* petitioner asserts that the Bureau of Prisons ("BOP") has wrongfully expelled him from the Bureau's Residential Drug Abuse Treatment Program ("RDAP"). Upon a preliminary review of the file on April 26, 2010, the undersigned found that summary dismissal was not warranted at that time and the respondent was directed to file a response to the petition. On June 29, 2010, the respondent filed a Motion to Dismiss or for Summary Judgment and response to Show Cause. On June 30, 2010 a Roseboro Notice was issued, and the petitioner filed a response on July 28, 2010.

## I. Factual and Procedural History

The petitioner is a federal prisoner currently incarcerated at FCI Morgantown and has been so incarcerated since December 11, 2009. (Doc.22-8 ). He is serving a one hundred twenty (120) month sentenced followed by a five year term of supervised release for Conspiracy to Possess with Intent to Distribute 5 Kilograms or more of Cocaine in violation of 21 U.S.C. § 846. (Doc. 22-9, p. 2). The petitioner's projected release date via good conduct time release is October 14, 2011. (Doc. 22-9, p. 1).

On August 25, 2009, while designated to the Federal Correctional Institution in Forrest City, Arkansas ("FCI Forrest City"), the petitioner was informed that he had been accepted to participate in RDAP. (Doc. 22-4, p. 1). Thereafter, the petitioner was transferred to FCI Morgantown. (Doc. 22-8, p.1). The petitioner began participating in the RDAP program at FCI Morgantown on December 14, 2009. (Doc. 22-3, p.1). In administrative notes, dated January 29, 2010, the petitioner's Drug Abuse Treatment Specialist noted that the petitioner stated during his treatment planning interview that he had been sober since 1986. (Doc. 22-5 ). The petitioner further explained that his positive cocaine urinalysis during pre-trial was a result of his handling cocaine, a statement that was consistent with the petitioner's Pre-Sentence Report ("PSR"). (Doc. 23-3). The Specialist noted that the petitioner had been qualified for RDAP based on an interview at FCI Forrest City in which he reported cocaine abuse in the year prior to incarceration. (Id.). The petitioner explained that he did not recall making that statement and thought that he qualified for the RDAP based on the positive drug test during pretrial. (Id.). The Specialist noted that he would inform the RDAP coordinator. (Doc. 22-5). In a memorandum, dated February 22, 2010, FCI Morgantown's Drug Abuse Program Coordinator, Richard Williams, Psy.D., informed the petitioner of his removal from the RDAP because he did not meet the admissions criteria for the program. (Doc. 23-4, p. 1).

## II.  Contentions of the Parties

**A.  The Petitioner**

In the petition, the petitioner asserts that pursuant to BOP Policy Statement 5330.11 and 28 C.F.R. § 550.53, an inmate can be removed from the RDAP because of disruptive behavior. The petitioner maintains that the record clearly indicates that he was not disruptive. Accordingly, the

petitioner maintains that Dr. Williams "arbitrarily and capriciously 'expelled' [him] from 'RDAP' without sufficient cause or warning thus denying [him] the opportunity to defend himself." (Doc. 2, p. 4). Accordingly, the petitioner argues that his due process rights were violated. In addition, the petitioner argues that he signed a treatment contract which obligated him to a certain standard of performance, and there is no indication that he violated that standard. The petitioner argues that he and the BOP entered into this contract willfully and in good faith, and his expulsion was a violation of his contractual right to treatment. As relief, the petitioner seeks a Temporary Restraining Order placing him back in the RDAP program until he has exhausted his administrative remedies, or until this Court issues a ruling in this matter. In addition, the petitioner seeks an order placing him back in RDAP so that he can receive the drug treatment ordered by the District Court in its Judgment and Commitment Order, and that he legitimately needs.

## B. The Respondent

In the response, the respondent first asserts that the petition should be dismissed because the petitioner failed to exhaust his administrative remedies. In addition, the respondent argues that BOP staff did not violate the petitioner's due process rights, and the BOP did not err in its decision to discharge the petitioner from RDAP. Accordingly, the respondent contends that the petition should be dismissed.

## C. The Petitioner's Reply

In his reply to the respondent's Motion to Dismiss or, for Summary Judgment, the petitioner reiterates the arguments made in his petition. In addition, the petitioner argues that because he was determined to be eligible and was successfully participating in RDAP, his ejection, when no other participant was ejected, is a violation of his right to equal protection.

## III. Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. 18 U.S. C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement. According to the regulations, in order to be considered eligible for the residential drug abuse program, the inmate must have a verifiable documented drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, must ordinarily be within thirty-six months of release and the security level of the residential program institution must be appropriate for the inmate. 28 C.F.R. § 550.56(a). Participation in the program is voluntary and decisions on placement are made by the drug abuse treatment coordinator. 28 C.F.R. § 550.56(b).

The application of § 550.56 is set forth in Program Statement ("PS") 5330.10, which states in relevant part:

> **Eligibility. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**

> **(1) The inmate must have a verifiable documented drug abuse problem.** Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The information must meet the diagnostic criteria for substance abuse or dependence indicated in the <u>Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV)</u>. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

PS 53310, Ch. 5, § 5.4.1, page 3-4 (emphasis in original).

## IV. Analysis

### A. Exhaustion

In the response to the petition, the respondent argues that under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The Respondent then cites several cases in which the Supreme Court and the Fourth Circuit Court of Appeals have held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001); Anderson v. XYZ Prison Health Services, Inc., 407 F.3d 674 (4th Cir. 2005). In addition, the Respondent notes that the Fourth Circuit has applied these same principles to petitions for writ of habeas corpus. See Asare v. U.S. Parole Comm., 2 F.3d 540, 544 (4th Cir. 1993); Miller v. Clark,

958 F.2d 368, 1992 WL 48031 (4th Cir., March 16, 1992).

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, the respondents argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[1]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue. at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

Here, it is not disputed that the petitioner failed to exhaust his administrative remedies prior

---

[1] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

to filing suit in this Court. However, this case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B. 18 U.S.C. § 3625**

Sections 3621(b) and (e) clearly state that determining which prisoners are eligible for substance abuse treatment is within the sole discretion of the BOP, as is the decision to reduce a prisoner's sentence by up to one-year upon the successful completion of such programs. Moreover, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded these subsections from judicial review under the Administrative Procedures Act ("APA"). See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."[2]

Accordingly, any substantive decision by the BOP with respect to the petitioner's participation in RDAP is not reviewable by this Court. However, where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review. Davis v. Beeler, 966 F.Supp. at 489. The first question is whether any cognizable constitutional claim has been presented. See Webster v. Doe, 486 U.S. 592 (1988)). The second question is whether an agency's interpretation of a statute is contrary to well-settled law. See Neal v. United States, 516 U.S. 284 (1996)).

---

[2] Pursuant to 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.

**C. Petitioner's Constitutional Claims**

    1.  Due Process

In the petition, Petitioner asserts that the BOP's to expel him from RDAP is a violation of his right to due process. This claim is without merit.

It is well established that in order to demonstrate a due process violation, a petitioner must show that he was deprived of a liberty or property interest protected under the Fifth Amendment. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right to participate in rehabilitative programs while incarcerated nor in being released before the completion of a valid sentence. Id.; see also Moody v. Daggert, 429 U.S. 78, 88, n.9 (1976)(finding no due process protections were required regarding prisoner classification and eligibility for rehabilitative programs in the federal system and determining that Congress had given federal prison officials full discretion to control these conditions of confinement, and petitioner had not legitimate or constitutional entitlement to invoke due process); see also Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999)(finding that BOP has wide discretion in determining both whether an inmate enters a substance abuse treatment program and whether to grant or deny inmates a sentence reduction under 18 U.S.C. § 3621(e)).

    2.  Equal Protection

In addition to arguing that his due process rights were denied, the petitioner also argues that his expulsion from RDAP is a violation of his equal protection rights. This claim is also without merit.

The equal protection clause provides that no person shall be denied equal protection under

the laws. Therefore, to be successful on an equal protection claim, the petitioner must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, the petitioner fails to assert that any similarly situated persons were treated differently than him, or that the alleged unequal treatment was the result of intentional or purposeful discrimination. In fact, the Declaration of Dr. Williams confirms that per BOP policy, any prisoner who wishes to participate in the RDAP must show verification of substance abuse within one year prior to his arrest. (Doc. 22-3, p. 2).[3] Because the petitioner has failed to show that any other inmate lacking adequate documentation of substance abuse has been permitted to remain in RDAP, he has failed to show that his rights under the equal protection clause have been violated.

**D. Agency's Interpretation of the Statute**

The standards set forth in Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), govern a Court's review of an agency's construction of a statute. Specifically,

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. In the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron at 842-43 (footnotes omitted).

---

[3] See also Laws v. Barron, 348 F.Supp.2d 795, 806 (E.D.Ky. 2004) (the BOP has consistently imposed these same requirements on all inmates throughout the BOP prison system).

In this case, although not addressed by either party, the true issue is how the phrase "substance abuse problem" is defined. Congress has not spoken to this precise question. Instead, Congress has left it to the discretion of the BOP to determine which prisoners have a substance abuse problem and are therefore eligible for the RDAP. In defining what constitutes a substance abuse problem, the BOP has reasonably turned to a diagnostic manual published by mental health professionals who deal with this issue on a regular basis. The DSM-IV diagnoses a substance abuse problem based upon the existence of certain symptoms during a twelve-month period. Because of the high demand for the RDAP program, and the potential for abuse due to the one-year sentence reduction, the BOP has found that a prisoner's substance abuse must be verified. See Laws v. Barron, 348 F.Supp.2d at 800 ( "Droves of inmates who were convicted of non violent . . . offenses have applied to be accepted into qualifying programs such as the RDAP so as to be eligible for early release.")

Further, the BOP has reasonably determined that the documented substance abuse problem must occur within the twelve months preceding arrest or incarceration because those individuals are most in need of the program and will receive the maximum benefit. Thus, the undersigned finds that the BOP's interpretation of "substance abuse problem," and its related criteria, is a reasonable interpretation of the 18 U.S.C. § 3621,[4] and the decision of Dr. Williams finding the petitioner

---

[4] Other Courts have made similar findings. See Shew v. FCI Beckley, 2006 WL 3456691 * 4 (S.D.W.Va. Sept. 19, 2006) (finding that the BOP's interpretation of § 3621(e) "neither violates any statutory or constitutional provision, nor is in conflict with any rule, regulation or program statement"); Montilla v. Nash, 2006 WL 1806414 (D.N.J. June 28, 2006) (the challenged policy and practice of the BOP is a reasonable interpretation of the § 3621(e)); Quintana v. Bauknecht, 2006 WL 1174353 (N.D.Fla. May 2, 2006) (finding that the BOP's practice of requiring written document of a verifiable drug abuse problem is not an impermissible or unreasonable interpretation of § 3621(e)); Goren v. Apker, supra (finding that the BOP's interpretation of § 3621(e) is a permissible exercise of the broad discretion Congress granted to the BOP to administer the RDAP); Laws v. Barron, supra (the BOP's interpretation of § 3621(e) does not contravene well-settled caselaw), *but compare*, Kuna v. Daniels, 234 F.Supp.2d 1168 (D.Or. 2002) (finding that PS 5330.10 does not require verification in an inmate's central file of abuse or

ineligible for RDAP[5] and terminating him from the program does not violate the terms of the statute authorizing the RDAP.

E. **Injunctive Relief**

The Supreme Court of the United States explained the relevant test for granting a preliminary injunction in <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S.Ct. 365, 374-76 (1008). A moving party must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." <u>See also</u> <u>Real Truth About Obama, Inc.v. Federal Election Comm'n,</u> 575 F.3d 342 (4th Cir. 2009).

Without specifically addressing the other factors, the petitioner's request for a preliminary injunction clearly fails to satisfy the first factor because, as noted above, the petitioner cannot succeed on the merits of his petition.

## V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Doc. 21) be **GRANTED**, the petitioner's Motions for a Temporary Restraining Order (Docs. 2 and 12) be **DENIED**, and the petitioner's § 2241 petition

---

dependence, only the mere use of drugs or alcohol, therefore, the BOP acted arbitrarily in imposing requirements beyond those in its program statement); <u>Mitchell v. Andrews</u>, 235 F.Supp.2d 1085 (E.D.Cal. 2001) (finding that it is an unreasonable exercise of the BOP's discretion under the statute to require verification of a substance abuse problem in the twelve months preceding arrest or incarceration).

[5]As noted by Dr. Williams, the petitioner's "target period before his arrest on October 22, 2003, to October 22, 2002. Review of his Pre-Sentence Report and self-report are consistent that [he] has not used cocaine since 1986. Despite [his] positive urinalysis for cocaine after his arrest on October 27, 2003, he admitted that the positive urinalysis was a "table high" based on handling cocaine rather than based on the use of the drug. Additionally, that positive urinalysis did not fall within [his] target period *before* arrest as required by policy. (Doc. 22-3, p2)(emphasis in original).

be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 5, 2010

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE